FILED

14 JAN 15 PM 3:49

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN E. KELLY,<br><br>               Petitioner,<br>vs.<br><br>JEFFREY BEARD, Secretary of the California Department of Corrections and Rehabilitation,<br><br>               Respondent. | CASE NO. 13cv0236-DMS(KSC)<br><br>**REPORT AND RECOMMENDATION TO GRANT RESPONDENT'S MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[Doc. Nos. 1, 10, 13] |

On January 28, 2013, petitioner, John E. Kelly ("petitioner"), a state prisoner proceeding *pro se* and *in forma pauperis*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. [Doc. No. 1] On May 29, 2013, respondent Jeffrey Beard ("respondent") filed a Motion to Dismiss Petition for Writ of Habeas Corpus as Untimely Filed. [Doc. No. 10] In response to the Motion to Dismiss, petitioner filed a Motion to Grant Petition for Writ of Habeas Corpus, asserting that the Petition was timely filed, and in the alternative, that the Petition includes newly discovered evidence of petitioner's actual innocence. [Doc. No. 13] After a thorough review of the Petition, respondent's Motion to Dismiss, petitioner's Motion to Grant, the supporting documents submitted by the parties [Doc. Nos. 1, 10, 13], and relevant law, and for the reasons outlined in greater detail below, the Court **RECOMMENDS** that respondent's Motion to Dismiss [Doc. No. 10] be **GRANTED** and that the Petition [Doc. No. 1] be **DISMISSED**.

# I. PROCEDURAL HISTORY

The protracted record of petitioner's prior state and federal judicial proceedings presented in the Petition spans approximately twenty-two years, beginning with his 1991 criminal conviction and sentencing, up through the January 2013 filing of this Petition. In 1991, petitioner was convicted of robbery and assault with intent to commit rape in San Diego County Superior Court, case CRN19777. [Lodgment, ("Lodg.") 1] Direct review of the conviction concluded on June 17, 1992, when the California Supreme Court denied petitioner's request for review. [Lodg. 9]

Subsequent to his release from prison for the 1991 conviction, petitioner was convicted in 1997 of robbery following a jury trial in San Diego County Superior Court, case SDC124427. [Lodg. 11] Petitioner was tried with a co-defendant, Clarence Dair ("Dair"). *Id.* Because the two counts from his 1991 conviction counted as separate strikes, petitioner was sentenced to an indeterminate prison term of thirty years to life: twenty five years to life for the robbery, plus an enhancement of five years due to the prior 1991 convictions. [Lodg. 11; 2 CT 259] A direct appeal was filed on behalf of petitioner and his co-defendant, Dair. [Lodgs. 12-17] On September 9, 1998, the California Court of Appeal affirmed the conviction as to both petitioner and co-defendant Dair. [Lodg. 18] Dair filed a Petition for Review with the California Supreme Court, which was denied on December 16, 1998.[1] [Lodg. 20]

On September 21, 1999, petitioner filed his first habeas petition in San Diego County Superior Court, case HC16089, challenging his sentence from the 1997 robbery conviction. [Lodg. 22] Petitioner claimed that he received ineffective assistance from appellate counsel because counsel failed to challenge the validity of the convictions from his 1991 case. [Lodgs. 22, 23] In the same petition, petitioner attacked the validity of his 1991 convictions and resulting strikes based upon ineffective assistance from

---

[1] While the California Supreme Court's case caption implies that petitioner was a party to the action, this Court's review of the submitted documents suggests that only Mr. Dair was involved at this level of direct review and, thus, that petitioner's direct review ended with the California Court of Appeal on September 9, 1998. [*See* Lodgs. 19-20]

trial counsel who represented him in the 1991 case. *Id.* On November 24, 1999, the Superior Court denied the petition. [Lodg. 23] Petitioner's ineffective assistance of appellate counsel was denied on the merits, and the claim that his trial counsel from 1991 should have called a witness was denied as untimely. *Id.*

On December 19, 1999, petitioner filed a second habeas corpus petition in San Diego County Superior Court, case HC16089, which raised the same claims as the prior petition and also included a new claim that appellate counsel from the 1991 conviction was ineffective for failing to raise the issue of trial counsel's effectiveness on appeal. [*See* Lodg. 23 *cf.* Lodg. 24] On February 9, 2000, the Superior Court again denied petitioner's claims, and further ruled that his newly asserted claim was untimely. [Lodg. 25]

On March 26, 2000, petitioner filed his first appellate petition, appealing his second state habeas petition to the California Court of Appeal, Fourth Appellate District, Division One, case D035355. [Lodg. 26] On June 2, 2000, the Fourth Appellate District denied the petition regarding the effectiveness of his 1997 appellate counsel, holding that the 1997 appellate counsel had no duty to file a habeas petiton on behalf of petitioner for his 1991 conviction. [Lodg. 27] The Fourth Appellate District declined to address the merits of petitioner's arguments concerning the effectiveness of his trial counsel for the 1991 conviction because petitioner had not raised this issue with the Superior Court. *Id.*

On July 29, 2000, petitioner filed a third habeas petition in San Diego County Superior Court, case HC0579, this time raising a new ineffectiveness of counsel argument. [Lodg. 28] Petitioner claimed that his trial counsel from 1991 failed to call an exculpatory witness – the same issue that he raised in his second state habeas petition filed on December 19, 1999. [*See* Lodg. 28 *cf.* Lodg. 24] On August 18, 2000, the Superior Court denied the petition on the merits because the record documented that counsel did in fact contact this witness, and that counsel and petitioner made a tactical litigation decision not to call the witness. [Lodg. 29]

On October 13, 2000, petitioner filed a fourth habeas petition in San Diego County Superior Court, case HC0579, raising the same grounds for relief as his third state petition filed on July 29, 2000. [*See* Lodg. 30 *cf.* Lodg. 28] On November 10, 2000, the Superior Court denied the petition as successive. [Lodg. 31]

On April 17, 2001, petitioner filed a fifth habeas petition in San Diego County Superior Court, case HC0579, raising the same claim that his 1991 trial counsel was ineffective due to his alleged failure to call a witness, this time asserting that this argument constituted newly discovered evidence. [Lodg. 32] On May 30, 2001, the petition was denied as both successive and untimely. [Lodg. 33] The Superior Court further found that the evidence was not newly discovered. *Id.*

On July 6, 2001, petitioner filed his second and third appellate petitions with the California Court of Appeal, Fourth Appellate District, Division One, cases D038299 and D038300. [Lodgs. 34, 35] On July 31, 2011, the Court denied the petitions as untimely. [Lodgs. 36, 37]

On August 8, 2001, petitioner filed a habeas petition with the California Supreme Court, case S099860. [Lodg. 38] On January 29, 2002, the petition was denied as untimely. [Lodg. 39]

On March 10, 2005, after years without any habeas-related filings, petitioner filed a sixth habeas petition in San Diego County Superior Court, case HC16089. This petition contained a new set of claims regarding his 1997 conviction and sentence, including: (1) that his sentence in 1997 violated *ex post facto* principles because his convictions from 1991, which were used to enhance his sentence, pre-dated the enactment of California's three-strike law; and, (2) the prosecution used false information that petitioner had a prior conviction. [Lodg. 40] On April 28, 2005, the Superior Court denied the petition as untimely, noting that petitioner had not set forth any justifications for his eight-year delay in filing the petition, nor had he explained why he could not have raised the new claims in one of his prior petitions. [Lodg. 41]

On June 15, 2005, petitioner filed his fourth appellate petition with the

California Court of Appeal, Fourth Appellate District, Division One, case D046647, claiming that: (1) his sentence was illegal because the enhancements were based on false or misleading evidence and the two prior strike convictions actually constituted one; and, (2) there was a violation of *ex post facto* principles in the use of his 1991 convictions as strikes in the 1997 sentencing. [Lodg. 42] On August 4, 2005, the Fourth Appellate Division denied the petition because the claims had already been raised and denied in prior appeals. [Lodg. 43] Further, the Court rejected petitioner's *ex post facto* claim, ruling that there was no violation. *Id.*

On September 17, 2010, petitioner filed a seventh habeas petition in San Diego County Superior Court, case HC16089. [Lodg. 44] Four days later, on September 21, 2010, petitioner filed his eighth habeas petition in San Diego County Superior Court, also treated as case HC16089. [Lodg. 45]

On November 19, 2010, the Superior Court ordered respondent to submit an informal response to the September 17 and 21, 2010 petitions. [Lodg. 46] In lieu of filing the ordered informal response, respondent filed a "Motion to Dismiss the Informal Response," asserting lack of jurisdiction. [*See* Lodg. 48 at 2; *see also* Lodg. 47 at 6] In an Order dated January 3, 2011, the Superior Court denied respondent's Motion to Dismiss, clarified that it viewed the September 2010 petitions as an attack on the sentence issued in the 1997 case (SDC124427), and renewed its order that respondent file an informal response addressing the merits of petitioner's claim. [Lodg. 48] Respondent thereafter filed an informal response. [Lodgs. 47, 49] On March 23, 2011, the Superior Court issued an Order denying the seventh and eight petitions on the merits, finding that petitioner failed to meet his burden of showing he was entitled to habeas relief on the basis of newly discovered evidence. [Lodg. 50]

On May 23, 2011, petitioner filed his fifth appellate petition with the California Court of Appeal, Fourth Appellate District, Division One, case D059828, claiming that he had newly discovered evidence demonstrating that: (1) the 1991 conviction was based on the false, perjured testimony of the victim, Cheryl B.; and, (2) petitioner was

actually innocent of the 1991 crimes. [Lodg. 51] On June 23, 2011, the Fourth Appellate District denied the petition, citing the state trial court's findings that: (1) petitioner did not present new, credible, exculpatory evidence; and, (2) the victim's statements were credible and consistent. [Lodg. 52] In again finding that petitioner's evidence was not newly discovered, the appellate court noted that the purportedly "new" witness, Rosalind Blake, was known at the time of trial, as evidenced by a probation report that petitioner attached to his petition. [Lodg. 52]

On August 24, 2011, petitioner filed a habeas petition with the California Supreme Court, case S196020, rasing the same claims as were raised in the May 23, 2011 petition to the Fourth Appellate District. [Lodg. 53] On January 18, 2012, the California Supreme Court denied the petition as untimely. [Lodg. 54]

The instant Petition before this Court, petitioner's first Federal Petition for Writ of Habeas Corpus, was filed on January 10, 2013. [Doc. No. 1 (hereinafter the "Federal Petition")]

## II. STANDARD OF REVIEW

The Federal Petition is governed by 28 U.S.C. § 2254, as amended by the 1996 Antiterrorism and Effective Death Penalty Act ("AEDPA"). Section 2254(a) sets forth the scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treatises of the United States. 28 U.S.C. § 2254(a).

As amended, 28 U.S.C. § 2254(d)(1-2) reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To obtain federal habeas relief, petitioner must satisfy either Section 2254(d)(1) or Section 2254(d)(2). *See Williams v. Taylor*, 529 U.S. 362, 399, 403 (2000). Under Section 2254(d)(1), "a state court decision is 'contrary to our clearly established [federal] precedent if the state court applies a rule that contradicts the governing law set forth in our cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'" *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003). Under Section 2254(d)(2), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75. The Supreme Court has clarified that even an erroneous or incorrect state court application of clearly established law is insufficient for a habeas grant, unless petitioner establishes that the state court's application was "objectively unreasonable." *Id.*

When there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). If the dispositive state court order does not provide any reasoning to support its decision, federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established U.S. Supreme Court law. *Allen v. Ornoski*, 435 F.3d 946, 955 (9th Cir. 2006). A state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *Early v. Packer*, 537 U.S. 3, 8 (2002). Absent citations to Supreme Court precedent, habeas relief is not merited if the state court decision neither contradicts the reasoning nor the results of Supreme Court holdings. *Id.*

/ / /

/ / /

/ / /

## III. DISCUSSION

### A. Timeliness of the Petition

Any habeas petition filed in federal court after April 24, 1996 is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997). Under AEDPA, a state prisoner has one year from the finality of a state court judgment to file a writ of habeas corpus in federal court. 28 U.S.C. § 2244(d); *Lawrence v. Florida*, 549 U.S. 327, 329 (2007). Once the AEDPA limitations period expires, a subsequently filed petition for post-conviction relief from the judgment cannot restart the timeliness clock. *See Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001); *see also Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (holding that "section 2244(d) does not permit reinitiation of the limitations period that has ended before the state petition was filed"); *Lott v. Mueller*, 304 F.3d 918, 922-23 (9th Cir. 2002) (prisoners' "ability to challenge the lawfulness of their incarceration is permanently foreclosed" after the one-year limitation period expires).

Normally, a "judgment bec[omes] final by the conclusion of direct review or the expiration of the time for seeking such review," at which point the AEDPA clock starts running. 28 U.S.C. § 2244(d)(1)(A); *see Wixom v. Washington*, 264 F.3d 894, 897-98 (9th Cir. 2001). For purposes of 28 U.S.C. § 2254, "judgment" refers "to the judgment of conviction and sentence," and "direct review" is the "direct appellate review of that judgment." *Redd v. McGrath*, 343 F.3d 1077, 1081 (9th Cir.2003); *see Burton v. Stewart*, 549 U.S. 147, 156–57 (2007) (specifying that "final judgment" includes both the conviction and sentence under which the prisoner is in custody). For 28 U.S.C. § 2244(d)(1)(A) calculation purposes, the direct review period includes the 90-day period within which a petitioner may file a petition for writ of certiorari in the United States Supreme Court. *Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999); *Hemmerle v. Schiro*, 495 F.3d 1069, 1073-74 (9th Cir. 2007).

The AEDPA limitations period is subject to statutory tolling. The "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2254(d)(2); *see Carey v. Saffold*, 536 U.S. 214, 219-20 (2002) (holding that the time during which a state application is "pending" includes the period between a lower court's denial of relief and the filing in a higher court, provided that the filing in the higher court is timely under state law). Under California's system of independent collateral review, "a prisoner seeks review of a lower court's denial of relief by filing an original petition for habeas corpus relief in the reviewing court." *Banjo v. Ayers*, 614 F.3d 964, 968 (9th Cir. 2010). "Post-conviction review is 'pending,' and thus the statute of limitations tolls, while a prisoner is pursuing a full round of habeas relief in the state court," including the time between a lower court's adverse ruling and the prisoner's filing for relief in a higher state court. *Id.* (citing *Carey*, 536 U.S. at 219-21). "The period between a California lower court's denial of review and the filing of an original petition in a higher court is tolled – because it is part of a single round of habeas relief – so long as the filing is timely under California law." *Banjo*, 614 F.3d at 968 (citing *Evans v. Chavis*, 546 U.S. 189, 192-93 (2006) (finding a petition timely filed in California if it is filed within undefined "reasonable time")); *see Waldrip v. Hall*, 548 F.3d 729, 734 (9th Cir. 2008).

When a state court rejects a prisoner's application for post-conviction relief for failure to comply with state-law conditions of filing, the application is not considered "properly filed" as required for statutory tolling. *Zepeda v. Walker*, 581 F.3d 1013, 1018 (9th Cir. 2009) (citing 28 U.S.C.A. § 2244(d)(2)); *Thorson v. Palmer*, 479 F.3d. 645 (9th Cir. 2007) (untimely petition under state law does not toll the statute because such a petition is "neither 'properly filed' nor 'pending'"). "[T]ime limits, no matter their form, are 'filing' conditions," and when the state court rejected a petition "as untimely, it was not 'properly filed,' and [the petitioner was] ...

not entitled to statutory tolling under § 2244(d)(2)." *Pace v. DiGuglielmo*, 544 U.S. 408, 417, 414 (2005) ("When a post-conviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2).") (quoting *Carey*, 536 U.S. at 226).

The AEDPA statute of limitations can be equitably tolled, however, in appropriate circumstances. *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010) (as "a nonjurisdictional federal statute of limitations," [AEDPA] is "subject to a 'rebuttable presumption' in favor of 'equitable tolling'"); *see Laws v. Lamarque*, 351 F.3d 919 (9th Cir. 2003); *see also Doe v. Busby*, 661 F.3d 1001, 1011 (9th Cir. 2011). Nevertheless, "a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 130 S.Ct. at 2562 (quoting *Pace*, 544 U.S. at 418). The obstructing causal circumstances must be "'beyond a prisoner's control'" and "'make it *impossible* to file a petition on time.'" *Ford v. Gonzalez*, 683 F.3d 1230, 1237 (9th Cir. 2012) (quoting *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (emphasis in original). The petitioner "bears the burden of showing that this extraordinary exclusion should apply to him." *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002).

A federal habeas court should "begin [its AEDPA statute of limitations analysis] with the relevant timeliness calculations." *Miranda*, 292 F.3d at 1065; *Jorss v. Gomez*, 311 F.3d 1189, 1192 (9th Cir. 2002) ("a court must first determine whether a petition was untimely under the statute itself before it considers whether [statutory or] equitable tolling should be applied").

**1. Statutory Tolling**

In the Motion to Dismiss, respondent asserts that the Federal Petition is time-barred under AEPDA and thus should be dismissed. [Doc. 10-1, p. 5] Respondent further argues that timeliness calculations should commence on April 24, 1996, the date AEDPA became effective, because petitioner is actually trying to challenge the

validity of his 1991 conviction which became final before AEPDA's effective date. *Id.* at 12. In his Motion to Grant Petition, petitioner asserts that the Federal Petition is timely filed, and that respondent's contention that it is untimely was "flatly rejected" by the "lower courts." [Doc. No. 13]

Because the Federal Petition was filed after April 24, 1996, it is governed by AEDPA's one-year statute of limitations. *Smith v. Robbins*, 528 U.S. 259, 268 n.3 (2000). As is evident from the procedural history summarized above, no tolling – statutory or equitable – can save this Petition from a finding that it is time-barred under AEDPA's one-year statute of limitations. Regardless of whether the calculations commence with the finality of his original 1991 judgment of conviction, or with the finality of his 1997 judgment of conviction, the Federal Petition filed more than a decade later in 2013 is time-barred under AEDPA.

Assuming for purposes of evaluating this issue that the 1991 convictions are controlling and in the absence of statutory tolling, the start date for AEDPA's one-year statute of limitations would be April 24, 1996 (the date AEDPA was enacted) and the expiration date of the one-year period would be April 24, 1997. *Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001) (for convictions which became final prior to AEDPA's enactment, Fed.R.Civ.Pro. 6(a) governs the calculation). Petitioner did not file his first habeas petition in state court until September 21, 1999, more than two years later. [Lodg. 22] This filing, therefore, was untimely, and no basis for tolling exists. *See Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001); *see also Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (holding that "section 2244(d) does not permit reinitiation of the limitations period that has ended before the state petition was filed"); *Lott v. Mueller*, 304 F.3d 918, 922-23 (9th Cir. 2002) (finding that after the one-year limitation period expires, prisoners' "ability to challenge the lawfulness of their incarceration is permanently foreclosed"). Thus, operating under respondent's assumption, petitioner's instant Petition must be denied as untimely.

In the alternative, this Court also analyzed the timeliness of the Federal Petition using the date of finality of the 1997 conviction as the commencement date for the AEDPA one-year statute of limitations. Using the 1997 conviction as the starting point, this Court calculates that petitioner's conviction became final, and thus the statute of limitations commenced, on March 16, 1999, ninety days following the California Supreme Court's denial of review on December 16, 1998. [Lodg. 20]; *see Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 2002). Therefore, as of March 16, 1999, petitioner had 365 days, absent tolling, to file his first federal habeas petition. Even operating under this analysis, petitioner did not file his Federal Petition until January 28, 2013. Accordingly, it is time-barred under AEDPA for the reasons articulated in greater detail below.

Petitioner's first state habeas petition was filed on September 21, 1999. Between the date of finality, March 16, 1999, and the date on which the state habeas was filed on September 21, 1999, 187 days elapsed, leaving 177 days (up to an including May 21, 2000) left in the limitations period. Because the September 21, 1999 petition was timely filed, the period of limitations was statutorily tolled during the pendency of the petition. *See* 28 U.S.C. § 2244(d)(2).

On December 19, 1999, petitioner filed his second state court petition with the Superior Court. This filing did not toll the statute because it was not a "filing of a petition at the next state appellate level." *See Nino v. Galaza*, 183 F.3d 1003, 1006-07 (9th Cir. 1999). Thus, there was no tolling between the Superior Court's denial of his first state petition and the filing the second petition; nor was there tolling during the pendency of the second petition.

Accordingly, the period of limitations ran during the 77 days from November 25, 1999, the day after the Superior Court denied the first petition, through February 9, 2000, the date on which the second habeas petition was denied. Thus, as of February 9, 2000, petitioner had 100 days remaining, absent tolling, during which he could timely file for federal habeas relief.

On March 26, 2000, petitioner filed a petition in the California Court of Appeal, which was denied on June 2, 2000. Because petitioner was moving to the next state appellate level, the statute was tolled during the time period between the lower court's denial on February 9, 2000, and the time during which the petition was pending in the appellate court. *See Id.* Thus, as of June 2, 2000, when the Fourth Appellate District denied his claim, petitioner had 100 days remaining, absent tolling, to file his first federal habeas petition.

Petitioner filed his third state petition in Superior Court on July 29, 2000. As discussed above, because petitioner did not file the petition at the next level of appellate review, the statute was not tolled in the period between filings, or during the pendency of the application. Thus, the statutory clock continued to run between June 2, 2000, and August 18, 2000, the date on which the Superior Court denied the July 29, 2000 petition. Accordingly, the 78 days during this period are subtracted from the remaining 100 days in the statutory period, leaving petitioner with 22 days, absent statutory tolling, to file his first federal habeas petition. In sum, petitioner was required to file his petition in federal court by September 11, 2000.

Fifty-four days later, on October 13, 2000, petitioner filed yet another habeas petition in Superior Court. Like those noted above, this filing did not toll the statute because petitioner did not advance to the next level of state appellate review. As such, petitioner's October 13, 2000 filing, made 32 days after the expiration of the AEDPA's statute of limitations, was untimely.

Petitioner's AEDPA statute of limitations, including all applicable statutory tolling, ended on September 11, 2000. Once the federal limitations period has run, the filing of a new state petition has no impact on tolling because a state petition merely tolls an *unexpired* limitations period; it cannot breath new life into an expired limitations period. *See Pace*, 544 U.S. at 417. Thus, any federal habeas petitions filed by petitioner after September 11, 2000 are untimely under AEDPA. Accordingly, petitioner's Federal Petition presently before this Court is untimely,

absent a finding of equitable tolling.

### 2. Equitable Tolling

The one-year limitations period under AEDPA is subject to equitable tolling in certain rare circumstances. *Holland v. Florida*, 130 S.Ct. 2549, 2554 (2010). The petitioner bears the burden of proving that equitable tolling is appropriate by establishing: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way" of timely filing his petition. *Pace*, 544 U.S. at 418; *see Espinoza–Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir.2005). More specifically, the petitioner must show that "the extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time." *Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir.2009). The determination of whether a petitioner is entitled to equitable tolling is a "fact-specific inquiry." *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir.2001) (citing *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir.2000)). Equitable tolling "is unavailable in most cases," as the "threshold necessary to trigger equitable tolling is very high." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir.1999); *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir.2002).

A credible claim of actual innocence supported by newly discovered evidence constitutes an equitable exception to the one-year limitations period under AEDPA. *Lee v. Lampert*, 653 F.3d 929, 932 (9th Cir. 2011). In addition to proving that equitable tolling is appropriate under AEDPA, a petitioner who presents newly discovered evidence of his actual innocence must demonstrate that, "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995); *Lee*, 653 F.3d at 938. "Tenable actual innocence ... pleas are rare." *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013). In *Schlup*, the Court noted that a claim of innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on

the merits." *Schlup*, 513 U.S. at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)); *see also House v. Bell*, 547 U.S. 518, 539 (2006) (noting that the case at hand involved a "federal habeas petition seeking consideration of defaulted claims based on a showing of actual innocence").

In *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997), the Ninth Circuit held that "a habeas petitioner asserting a freestanding innocence claim must go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." Demonstrating probable innocence requires "a stronger showing than insufficiency of the evidence to convict." *Id.* In *Bousley v. United States*, 523 U.S. 614, 623 (1998), the United States Supreme Court explained that, "[t]o establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." (internal quotation marks omitted). In meeting this burden, the petitioner is not limited to the existing trial record because the issue is "factual innocence, not mere legal insufficiency." *Id.*

Petitioner argues that he has newly discovered evidence of his innocence related to the 1991 convictions, which constituted prior strikes for sentencing purposes in his 1997 offense. In support of his contention regarding his innocence, petitioner provides the Court with two exhibits. Exhibit A is a May 19, 1998 Declaration from Arthur Racicot, a private investigator who interviewed Rosalyn Blake[2], an alleged witness to the 1991 events. [Doc. No. 1, pp. 13-19] Exhibit B is a March 5, 2010 Declaration from Lennel Kelley, a prisoner who petitioner met while incarcerated. *Id.* at 21-24. In Exhibit A, Arthur Racicot recounts his meeting with Rosalyn Blake, in which she allegedly claimed to have been present during the 1991 events and asserted that the sexual contact was consensual, and thus not rape. *Id.* at

---

[2] This Court recognizes the discrepancy in spelling between the California Court of Appeal's mention of "Rosalind" Blake in its June 23, 2011 denial of petitioner's state appellate petition [Lodg. 52], and investigator Arthur Racicot's May 19, 1998 Declaration recounting his interview of "Rosalyn" Blake [Doc. No. 1, p. 13]. Whether spelled Rosalind or Rosalyn, the Court understands this to be the same person.

15-17. In Exhibit B, Lennel Kelley claims that while the victim in the 1991 case stayed at the house he shared with his wife, the victim told them that she had made a false report in connection with the 1991 events. *Id.* at 21-22.

Respondent argues that the two Declarations submitted by petitioner do not constitute evidence sufficient to prove actual innocence. [Doc. No. 10-1, pp. 19-24] Further, respondent contends that the "newly" discovered evidence referenced by petitioner in the form of Declaration of Lennel Kelley was comprehensively examined and rejected on the merits by the Superior Court on March 23, 2011. [Lodg. 50] In rejecting petitioner's argument, the Court then noted:

> Initially, it must be acknowledged that the circumstances presented here are by themselves suspicious – that is, an inmate in the same prison as Petitioner, coming forward to provide this new information nearly 20 years after the fact, and essentially "out of the blue." This relative timing of the disclosure is also suspect, having occurred only after numerous prior writs, each raising various legal issues, have failed. One is left with the impression that Petitioner is in a position of "what more can I try." But far more importantly, the credibility of Lennel Kelley, is tenuous at best. He has a substantial number of criminal convictions for moral turpitude crimes and, as pointed out by Respondent, his statement has several inconsistencies. For instance, Kelley says that at the time the victim stayed with him in December 1990, his ex-fiance was Lynn Watkins/Nardis. However, in a statement to his probation officer in April 1991, Kelley said he had been living with his girlfriend, a woman he identified as Amber Newsome, for the past year, in San Diego, California.

[Lodg. 50, p. 9]

The Superior Court further stated:

> Petitioner has provided no corroboration of Mr. Kelley's claims when it appears corroboration, if the allegations are true, should exist. For example, there is no declaration from Mrs. Watkins/Nardis, who allegedly also heard the statements made by the victim and reported it to the police.... It is persuasive to this court that Petitioner chose to forgo a defense of consent at trial and pursued instead a defense of mistaken identity. If his position now is true, he would have known his position then was false. Switching theories when one does not work does not suggest actual innocence.

[Lodg. 50, p. 10]

///

Moreover, the Superior Court reasoned that:

> The victim in the case at question [] has submitted a declaration in support of the Respondent's response. [] She states under penalty of perjury that she did not lie on the stand, that Petitioner did assault her, and that she was alone at the time. She also asserts that she does not recognize the names Lennel[] Kelley, Lynn Watkins, or Lynn Nardis, and never claimed to have made a false report to the police. Her statements are consistent and credible.

*Id.*

Petitioner has failed to carry his burden of establishing that his circumstances qualify for equitable tolling on grounds of "actual innocence." First, petitioner has failed to demonstrate that extraordinary circumstances outside of his control made it impossible for him to timely file his Federal Petition. *Pace*, 544 U.S. at 418; *see Espinoza–Matthews*, 432 F.3d at 1026; *Ramirez v. Yates*, 571 F.3d at 997. Second, the "newly discovered evidence" relied on by petitioner does not constitute evidence sufficient to "prove that he is probably innocent" and that no reasonable juror would have convicted him. *Carriger*, 132 F.3d at 476; *Schlup*, 513 U.S. at 329; *Bousley*, 523 U.S. at 623. For the reasons discussed in greater detail below, this "new" evidence fails to provide a basis upon which this Court can conclude that an equitable exception to the one-year statute of limitations under AEDPA is warranted. *Lee*, 653 F.3d at 932.

The two pieces of "newly discovered evidence" presented, namely the Declarations executed by Arthur Racicot and Lennel Kelley, contain evidence that is either not new or not credible, or both. As to the May 19, 1998 Declaration by Arthur Racicot, this statement was executed nearly fifteen years before the filing of the instant Petition, and recounts an interview with Rosalyn Blake which occurred on March 27, 1997, *before* petitioner's 1997 trial. This evidence is not new. Furthermore, this Court finds the Declaration, which challenges the trial testimony of the victim by calling her credibility into question, lacks credibility. It constitutes hearsay evidence, and it is telling that petitioner failed to submit a Declaration from Rosalyn Blake herself, attesting to her own observations and to the veracity of the

statements she allegedly made to Arthur Racicot in 1997. This evidence falls short of the standards articulated in *Carriger*, *Schlup*, and *Bousley*, *supra*.

With respect to the Declaration submitted by Lennel Kelley, this evidence was previously examined and rejected by the Superior Court. As noted by that Court in its March 23, 2011 Order Denying Petition for Writ of Habeas Corpus [Lodg. 50], this Declaration is suspect in terms of credibility, veracity, and evidentiary value. Not only did the jailhouse meeting between petitioner and Kelley occur "out of the blue," approximately twenty years after the crime in question occurred, it conveniently occurred after petitioner had filed numerous other writs, each raising various legal issues, which had all been denied. *Id.* at 9. Given Kelley's numerous criminal convictions for crimes of moral turpitude and several inconsistencies identified in his statements, his credibility is "tenuous at best." *Id.* Additionally, the statement lacks any corroboration, namely from Kelley's ex-fiancé. *Id.* As with the Declaration of Arthur Racicot, the Declaration of Lennel Kelley, at best, calls into question the victim's credibility, which the Superior Court squarely rejected in ruling that: "[h]er statements are consistent and credible." *Id.* at 10. Again, this evidence falls short of the standards articulated in *Carriger*, *Schlup*, and *Bousley*, *supra*.

Much like the Superior Court, this Court finds it persuasive that petitioner "chose to forgo a defense of consent at trial and pursued instead a defense of mistaken identity.... Switching theories when one does not work does not suggest actual innocence," but instead leaves this Court with "the impression that [p]etitioner is in a position of 'what more can I try.'" [Lodg. 50, pp. 9-10] For all of these reasons, this Court finds that petitioner has not met his burden of establishing that "in light of all the [new] evidence, it is more likely than not that no reasonable juror would have convicted him." *See Bousley*, 523 U.S. at 623. This fails to meet the "very high" threshold required to trigger equitable tolling. *Miles*, 187 F.3d at 1107; *Castro*, 292 F.3d at 1066.

**B. Merits of the Petition**

Due to this Court's determination that no tolling – statutory or equitable – can save this Petition from a finding that it is time-barred under AEDPA's one-year statute of limitations, this Court will refrain from addressing the merits of the claims presented in petitioner's Federal Petition. *See supra.* pp. 10-11.

## IV. CONCLUSION

Petitioner filed his Federal Petition on January 28, 2013. [Doc. No. 1] However, the AEDPA statute of limitations, including all applicable statutory tolling, ended on September 11, 2000. Further, petitioner has failed to carry his burden of establishing that he qualifies for equitable tolling based on his theory of "actual innocence." Accordingly, this Court **RECOMMENDS** that respondent's Motion to Dismiss [Doc. No. 10] be **GRANTED** and that the Petition [Doc. No. 1] be **DISMISSED** as time-barred by AEDPA.

With respect to the recommendations made herein, this Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than **30 days from issuance of this Order**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation Re: Defendants' Motion to Dismiss."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **ten days after being served with the objections**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: January 15, 2014

KAREN S. CRAWFORD
United States Magistrate Judge